Good afternoon. May it please the Court, Mr. Bean. My name is Dale Bache. I'm an Assistant Federal Public Defender in the District of Arizona. With me are Paula Harms and Tom Phelan, and we represent Mr. Correll in these proceedings. When the Court sent this matter back to the District Court, it wanted to know why trial counsel did not put on mitigating evidence at sentencing, whether he conducted an investigation, and what mitigation evidence existed. We now know trial counsel conducted virtually no investigation for sentencing because he had a fundamental misunderstanding of the law. Let's start with where the District Court decided the remand. As I recall, it found there were two instances of ineffective assistance, but they were very narrow, and that in any event, they were insufficient to establish prejudice. Is that your understanding of what happened? Yes, Your Honor. Okay. Do you need additional IAC, ineffective assistance of counsel determinations out of this Court for you to make a difference on prejudice? Or maybe I could put it another way around. Suppose we are satisfied that the only two instances were those that were found by the District Court. How strong is your prejudice argument then? Well, Your Honor, we think the District Court was wrong in its analysis. However, if this Court just affirms the District Court on those two findings, we believe that there is significant mitigating evidence that existed that undermines the confidence in the outcome of the sentencing hearing in this case. Even if we are satisfied that the Court only found those two instances and they were, as it labeled them, narrow? In other words, can you still make a case on prejudice, is my question? Yes, Your Honor, because the evidence that the Court found trial counsel, or the areas where the Court found trial counsel to be deficient were his failure to review mental health records pertaining to Mr. Correll and his failure to obtain records regarding his head injury and to determine whether an expert was needed to assist him in preparing for the mitigation hearing. We believe that the evidence that was put forward at the District Court on those points, plus all the other mitigating evidence that was offered, was sufficient to demonstrate prejudice. What about the contention of the government that there's a factual dispute there that Mr. Collins was, in fact, in possession of the Gateway and the Vacaville mental health records? Well, the evidence that we put forward at the hearing demonstrates that he was not in possession of those records, that, in fact, the Gateway records were destroyed. I believe that some of the Vacaville records may have existed, but what was key is that evidence relating to Mr. Correll's mental health psychiatric records and mental health records were destroyed. And they were available at the time, but subsequently were destroyed. Well, as I understand, the government disputes the District Court's findings on that. What's our standard of review with respect to that contention? De Novo review, Your Honor. De Novo. All right. The District Court, when it made its decision, determined that the evidence that was presented during the evidentiary hearing did not show a causal nexus to the crime. And in addition, it excluded or discounted testimony of a number of witnesses. When the District Court rendered its decision, it was not enlightened by Wiggins, Tenard, or Rompilla. The District Court also ignored the core of Williams v. Taylor, where the Supreme Court deemed prejudicial counsel's failure to discover and present mitigating evidence, notwithstanding that the State could have presented highly damaging evidence in response. The mitigating evidence that trial counsel failed to discover and present is of the type that undermines confidence in the sentencing outcome in this case. Trial counsel's approach to sentencing demonstrates that he did not understand the concept of mitigation. He referred to the sentencing hearing as a dog and pony show, where there would be so much smoke and touchy-feely, fuzzy-headed kind of stuff would be offered. He thought that Carell's conduct in school and his behavior as a juvenile was aggravating. He believed he had to disprove a recognized mitigating circumstance in the state of Arizona. And when he did his investigation, albeit a very short investigation, all he was looking for was good character evidence relating to Mr. Carell. There is no excuse for counsel's failure to investigate in this case. Williams, Wiggins, and Rompilla say that counsel has to investigate. Two weeks ago, a panel of this Court in the Earp case also said that counsel has to investigate in capital cases. Did counsel – this is a hearing before the judge, right, at this time in Arizona law? It was the judge who did the sentencing? Yes. And what does the record show with respect to putting on Mr. Carell to testify on mitigation? Was that considered? Could it have happened? What is the record on it? Are you referring to the trial, Your Honor? No, on sentencing. Mr. Carell did not testify at the sentencing hearing, and there is nothing in the record to indicate that he in any way limited his lawyer's ability to conduct an investigation or there's nothing in the record to indicate that he was not willing to testify. And there was no practice run in trying to see what he would have testified or how he would have testified to the judge? There's nothing in the record as to that. What we do have is counsel putting on – the whole sentencing hearing lasted 8 pages in the trial transcript, and counsel put on no evidence at the sentencing hearing, as this Court found in the first Carell decision. Mr. Collins did not make strategic decisions. His choices were the result of a profound misunderstanding of the law and an unreasonable but unshakable belief that the trial judge would violate the Eighth Amendment and conflate constitutionally relevant mitigation evidence with aggravating evidence and use it as a basis to impose the death penalty. Counsel, what are we to do with the finding of the district court on remand that counsel – that counsel's strategy, Mr. Collins's strategy, was first to argue residual doubt and then, second, to portray the crime as a drug ripoff gone wrong in which Carell was not the trigger man? Now, those are specific findings in the record, as I understand it. I think the Court erred in making those findings because Mr. Collins testified that he – he – I'm sorry. Mr. Collins testified that residual doubt was not a factor. What he wanted the judge to do was to think that this was a drug ripoff gone bad. So if it was a drug ripoff gone bad, that's inconsistent with a theory of residual doubt. In addition, he wanted the judge to think that his client was under the influence of drugs at the time of the crime. So if the theory was residual doubt at trial, Mr. Collins would not have – have wanted the judge to know that his client was even there or that he was under the influence of drugs or that this was a drug ripoff that went bad. Do we owe any deference at all to this district court finding? I realize this is pre-EDPA, but is it de novo? The review is de novo because of the Court's reviewing the – the legal findings as well as the factual findings, and it's clear that when looking at a claim of ineffective assistance, the review by this Court is de novo. The district court erroneously excluded and discounted evidence going to the prejudice prong of Strickland when there was no causal connection between the evidence and the testimony. And in other instances, it gave little or no weight to testimony that was offered. This Court in Stankiewicz instructed that it does not matter if the district court believes or otherwise discounts the testimony of experts or other witnesses. The proper inquiry is whether there is a reasonable probability that at least one juror would credit the testimony. The district court was required to evaluate the totality of the evidence. How do we evaluate that in a judge sentencing scheme? From the perspective of a reasonable fact finder. The district court was required to evaluate the totality of the evidence both adduced at trial and at the habeas proceedings in conducting its prejudice analysis. There was, again, significant mitigation presented to the district court that under a series of cases by this Court is mitigating. Mr. Carell's dysfunctional family and abusive childhood mitigating under Boyd, Stankiewicz, Turner, Caro, Karras, and Ainsworth. His history of drug abuse, Stankiewicz, Silva, Turner, and Ainsworth. The head injury and brain damage, Stankiewicz, Silver, Caro, Ainsworth, and Douglas. Repeated failures in school, Silva. And sociopathy and antisocial personality disorder, Bernard Smith. Based on the complete record, we now know that trial counsel conducted no real investigation for sentencing and the evidence offered at the evidentiary hearing below undermines confidence in the outcome of the sentencing hearing. I'll reserve the balance of my time for rebuttal. Good afternoon. May it please the Court. My name is James Bean. I'm an assistant attorney general with the Arizona Attorney General's Office. I would like to spend the balance of my time talking about the prejudice prong of this case. After a nine-day evidentiary hearing in which Petitioner was afforded the opportunity to present the mitigation evidence that he felt he should have presented in the original that the sentencing profile in this case had barely been altered and that the confidence in the sentence, in the original sentence, had not been undermined. Before you get to prejudice, might we speak a little bit about some of the district court's analysis on the other ineffective assistance of counsel claims, just briefly? The district court seemed to believe that some of the action, or at least certainly the determination not to put on any mitigating evidence, was the product of a strategic decision. Correct? That's correct. Arizona law at the time, as acknowledged by the district court, required, mandated the imposition of a death penalty when there were certain aggravating factors proven, as there were in this case, and there was no mitigating evidence. Correct? That's correct. So how could it possibly be a reasonable strategy not to put on any mitigation evidence at all? Well, the burden then shifts to, after an aggravator is found, the burden shifts to the defendant to prove that there is substantial, substantive mitigation to warrant leniency. And by arguing the facts that Mr. He didn't put on any evidence at all, right? Well, he didn't put on any evidence, but he did make an argument to the court, and he based it on evidence that was presented in the pre-sentence report detailing the social history of Mr. Correll. And he made the argument that this was a drug ripoff gone bad, that Mr. Correll was not the primary actor in this case. He was a follower, and there was evidence in the trial testimony to support that, that he was under the influence of drugs at the time. Again, evidence to support that during trial. And that he had a dysfunctional family and was basically abandoned by his family at 14. So he wanted to present that, and he did present that. So there would be ---- As far as a dysfunctional family goes, that was not based on any evidence in the record, correct? That was an assertion of counsel based on, I guess, perhaps some material in the pre-sentence report, but nothing else. That was based on a statement made by Mr. Correll himself to the pre-sentence report writer. Yes. And the pre-sentence report was contested by counsel as being one-sided and unfair, right? Yes. He moved to strike portions of the pre-sentence report. The pre-sentence report recommended the death penalty? No. It did not take a position as to the death penalty. I think it did, if you look back on it. And it certainly said he was not capable of rehabilitation, right? That's correct. But all that goes to his strategy at that point. He knew that if he was going to put his mental health at issue, then the damaging rebuttal testimony that eventually came out at the evidentiary would have come out at the original sentencing proceeding. So there was strategy involved and there was evidence presented in mitigation. Had Petitioner's sentencing counsel gone with the strategy of presenting his client's emotional, mental problems, his drug abuse history, his drug usage at the time of the crime, and his dysfunctional upbringing, that would have allowed the State to bring out facts that the district court found not to be mitigating. The rape by Petitioner of a psychiatric patient when he was at Gateways Hospital, the numerous escapes from mental health facilities and rejection of efforts to provide him with treatment while at these facilities, Petitioner's taking of a hostage and armed aggression against a mental health worker in an escaped attempt. It would have brought out the facts underlying the 1978 armed robbery that Petitioner took part in that was the F-2 aggravator in this case. But all of those were known to the district court at the time via the pre-sentence report, correct? Most of those. For example, his criminal history was well known, right? Not the underlying facts of eliciting his, inducing his teenage brother and teenage sister into the convenience store and robbed the place. It was that he had an armed robbery conviction, but the facts underlying it. Why do you think that would have made any greater difference? I mean, he has an armed robbery conviction. I'm not quite sure why the additional facts would have made it. Well, that's exactly why he kept it. The facts are much more aggravating than just the armed robbery conviction. The facts underlying it show somebody who's in control and actually dictates two other individuals to help him accomplish this very dangerous crime. So he just wanted to sanitize it and keep it armed robbery. Mr. Collins did. But had he gone into the dysfunctional family or his base, more importantly, his mental health and the antisocial personality disorder that he would have had or would have been diagnosed with, then under Arizona law, those facts would have been relevant at that point. So there was a reason for him to just keep it sanitized at armed robbery. What did he have to lose by not bringing out these facts of the being serious head injuries and repeated problem, just social problems and the whole history, which just, I mean, I think anybody could make a pretty persuasive argument that this is a very troubled fellow who needs help. Well, it would have allowed him under Arizona case law, Thornton, and most recently Phillips v. Araneta, to get into the underlying facts. The question is what did his counsel have to lose by not putting, by not making a story, a sympathetic, trying to weave a sympathetic story out of all of this pattern? Which he didn't do. Well, frankly, based on the evidence and the investigation he did, he was having trouble or he could not come up with a sympathetic story. He could not make his client sympathetic. But what he could do and what he did do was try to argue the circumstances of the crime, the fact that it was a drug ripoff gone bad, and that he wasn't the main actor, and that the three individuals that died did not die at his hands, that he was under the influence of drugs at the time, and that he had this bad upbringing. So he tried to make him as sympathetic as possible. But if he opened the door, he knew enough that if he opened the door to mental health history, then the damaging rebuttal testimony, as the district court found. Of course there was some rebuttal testimony, but there was no affirmative case in chief. I mean, reading through the pre-sentence report, the mental health history is completely discounted. So all he had to work with was to show that he had significant mental problems, that he had organic, perhaps organic brain issues, that he had, I know the district court discounted, but post-traumatic stress disorder, that he had a long-term addiction to drugs. And that certainly diminished capacity as a factor, under a statutory factor in Arizona. It's not a pivotal factor, but it's certainly a statutory factor. And certainly it would have been subject to rebuttal. But without an affirmative case in chief, wasn't the outcome really assured. There was really nothing that he argued that was going to make a difference unless he put on a good case in chief. Well, he testified that there was a 1 in 20 chance that he would get the death penalty if he went with the way he went in his estimation, the evidence he presented. He thought it would be less of a chance for the death penalty if he put his mental health and the other things into the record, because it would have allowed, again, to drive home this rebuttal evidence that would have all but eviscerated any type of mitigation, again, as the district court found in this case. Well, a lot has changed since this case was first decided, and a lot has changed since the district court wrote its opinion. We have all these subsequent cases, Wiggins-Rompilla from the United States Supreme Court, which describes that type of evidence as classic mitigation. How do you think, how is your view of the law? Do you think that, do you discount Rompilla and Wiggins and their impact on this case, given the facts? Well, I think Wiggins talks mostly about a duty to investigate, and it says that you can reasonably, a failure to continue investigation is reasonable and constitutional if it would be counterproductive or fruitless. And in this case, Mr. Collins thought that if he went further down the road, Exhibit 34 in this, in the record, showed that he had the Vacaville and the gateways and his CDOC records, and if he went further down that road, it would open up this Pandora's box of terrible rebuttal mitigation. So to answer Your Honor's question, I think that Wiggins and Rompilla go more toward a duty to investigate. They do talk about prejudice there. But again, those cases and the cases that Mr. Bache spoke of that come from this Court's jurisprudence didn't have the added component that this case has, and that is the damaging rebuttal testimony that would have been brought up had this evidence been presented to the original sentencing court. You know, as I got the impression, looking through portions of the transcript, the counsel, Mr. Collins, seemed to be more concerned about this particular trial judge than he was over the nature of the record. Do you disagree with that? He was concerned about Judge Howe and how he would receive a diagnosis of antisocial personality disorder. He had practiced with Judge Howe when they were both together at the Maricopa County Public Defender's Office. I'm familiar with the trial judge, too, but is that a factor that should be taken into account and be determinative in deciding whether to not to make a record that's in your client's interest to preserve the record? It's absolutely something that should be taken into account. Should that be the dispositive factor? It's something that should be taken into account with other things. And Strickland itself talks about how you can take into consideration your strategy in presenting testimony based on the tendencies of the sentencing judge. Yes, but the problem I see with that, well, they're twofold. One is I get the impression, and I don't know the sentencing judge, but I get the impression from the record that this is a well-respected, thoughtful person who's good on the rules of evidence and is well-respected. That's what Collins testified to and that's what the district court found. And yet there is the implication that this judge was so biased and so prejudiced as to the introduction of evidence that was allowable under Arizona law that the judge would not receive it at all. Is that a fair characterization? The word bias is not used, but I agree with Chief Judge Schroeder that there is certainly an unmistakable implication in Collins' testimony that he was afraid of the judge and he wasn't going to put on certain testimony even though in other cases, he said in other cases, he would put it on. Well, again. But the two seem contradictory to me. No, I don't think that Mr. Collins felt that Judge Howe would fail to consider the antisocial personality disorder as he was as he had to under Lockett and Eddings in those cases, but he just wouldn't give it much weight. And I think that's a very important and crucial determination that sentencing counsel has to do in situations such as this. But let me posit one other aspect to this, is that there are other courts and the Arizona Court of Appeals is a good court. And if you put on the correct evidence, you make your case and you show that the district court wouldn't consider relevant mitigation evidence, that record is preserved for appeal. If you put on no evidence at all, if you fail to put on any evidence, you're also giving up your opportunities to make an appeal, aren't you? Regardless of your beliefs about the sentencing. Again, Your Honor, that comes into a strategic decision that had he put his mental health at issue, he knew that the prosecutor in this case was a very skilled prosecutor that would have unturned every stone to bring out every possible rebuttal evidence in this case and would have found the 11 factors that the district court relied on in finding that this rebuttal evidence all but eviscerated the possible mitigation that was presented in this case. I would like to address a couple of the points raised by Mr. Bache. Before you do that, I asked Mr. Bache on two occasions about the standard of review on the factual findings. Do you agree with Mr. Bache? No, I do not, Your Honor, and that's one of the points I was going to bring up. In Silva v. Woodford, a fairly recent case, talked about the standards of review in pre-AEDPA cases, and that was cited in the State's brief. And a factual finding, the standard of review in a factual finding instance is clear error. So this Court will have to find that Judge McNamee's factual findings in this case were clearly erroneous in order to overturn. And that would apply to the question of whether or not Collins was in possession of the mental health records as well, right? I'm sorry, Your Honor, could you restate that? And that standard of review would apply to the question of whether Attorney Collins was in possession of the mental health records as well. That's correct. Getting to the causal nexus argument that Petitioner's Counsel addressed, I believe that Petitioner's Counsel is maybe somewhat confused about the term nexus. In Tenard, the Fifth Circuit procedure that was held to be unconstitutional, you basically had a gatekeeper process there. And before the mitigation evidence could be considered, it had to have a nexus to the crime itself. That's not what the law is in Arizona. And what is stated in footnote 47 of the district court order aptly and correctly puts forth what the state of the law is in Arizona as to the causal nexus. In Arizona, under Lockett and Eddings, a state trial court has to consider all mitigation evidence, as Judge McNamee reflected, and what was done in the trial court. But the nexus part that Arizona operates under deals with the weight that is given to that evidence. So there is a differentiation between the Tenard nexus and the Arizona State nexus. Judge O'Scanlan, I believe, talked about the residual doubt. There was a residual doubt language in the district court's order. And at trial ---- Kennedy, that was a finding, wasn't it, as to what Mr. Collins' strategy was? At the hearing, Your Honor, yes, there was, to answer your question, there was a finding. At the hearing, Mr. Collins testified that at trial, they were going with, you know, you got the wrong person. It was Mr. Correll's brother, not Mr. Correll himself, that committed the crime. He didn't want to just all of a sudden flip at sentencing and say, well, you know, yeah, I did it, but, you know, at trial, you know, I was claiming my ---- I was claiming innocence. So that's how the residual doubt came into being in this case. The underlying facts in this case are horrendous. The question of guilt is no longer an issue. And the aggravating circumstances in this case are overwhelming, the three aggravating circumstances that were found. And consequently, according to this Court's own jurisprudence, substantial mitigation has to be found in order for ---- substantial mitigation is necessary for ---- in order for prejudice to be found. And as I've stated before, and what is so concisely and aptly reflected in the district court order, this evidence that was presented by Petitioner cannot be considered as substantial mitigation. Again, as I said, had this mitigation come forward, it would have allowed the State to present damaging and overwhelming and compelling rebuttal testimony. And it's Respondent's position that the case for death is better for the State now than it was in 1984 because of this very damaging rebuttal testimony. And, in fact, it's also Respondent's position that if this case were remanded back for a new sentencing, Petitioner's new sentencing counsel would fight two-thirds tooth and nail to keep this evidence out. So ---- Which evidence? The evidence of mitigation? The rebuttal evidence. The rebuttal evidence that would counter the mitigation. They would fight tooth and nail to keep that evidence out, even though in this proceeding it's deemed to be mitigation. Well, there's a suggestion made by your opposing counsel that notwithstanding that risk, our cases and the Supreme Court cases compel a defense counsel to run that risk, in other words, to go through and at least put on affirmative evidence of mitigation, running the risk that the State might trumpet. The point, as I understand, their principal point is that there was no showing at all. On behalf of Mr. Correll. What's your response to that? First of my response is that there was a showing, as I discussed with Justice ---- with Judge Thomas. What was in the pre-sentence report? Yes, and what he brought out in his argument at sentencing. But this Court has said that it's a constitutionally valid reason to forego certain mitigation when it opens the door to powerful and damaging rebuttal testimony. That has been in this Court's jurisprudence, Kincheloe, Seraprong's, and most recently, Williams. It's 384, Fed Third 567. This Court has said that if you're going to present mitigation, you can do it in such a way that it doesn't open the door for rebuttal testimony on those points. And that has also been held to be the case by the United States Supreme Court in Darden v. Wainwright and Berger v. Kemp. So there is this Court's jurisprudence and United States Supreme Court jurisprudence to support what Mr. Collins did in this case. And that's a, you know, it was a very close call. And I believe that had he gone forward the other way and presented the testimony that Petitioner's counsel wanted and got in at the evidentiary hearing, we might be here for another IAC claim based on, like, the Ward v. Calderon, where if you bring in testimony that damages your client, then you're ineffective. So it was a very fine line he had to walk there. In closing, I believe that the district court's ---- Kagan. Let me just ask you, would you just tell me, just explain to me once more what you understand to be defense counsel's strategy here? His strategy, Your Honor, was not to try to make his client sympathetic, because in his assessment after looking at the gateways, at the Vacaville, at his CDOC records, doing the 40 to 50 witness interview he did, knowing the facts of the crime, that he could not put on some type of gross intoxication at the time of the crime, knowing all that, what his strategy was, Your Honor, was to make the case as minimal as possible. And again ---- I know they're difficult to do, though, wouldn't you say? As you just said, the facts are horrendous, the crime is horrific. And sometimes counsel ---- And he was just convicted by a jury. And sometimes counsel are put in those horrific and very tough situations. But he's ---- And his strategy was to do nothing. No, his strategy was to argue the facts of the crime. Pardon? His strategy was to do nothing new, put on nothing new for the Court's consideration. Well, again, his strategy ---- I understand. His strategy was to put the defendant ---- the Petitioner is not the primary actor, that he was under the influence, that he'd been disowned by his family, and he did not actually kill the three individuals that were killed in this case. Respondents would ask ---- His strategy seemed to be to portray this as a one-time episode. And here you have the pre-sentence report where it just jumps out at you that he's had a long criminal history. How can that be a reasonable strategy? I don't know if Mr. Collins portrayed this as a one-time episode. He said it was a drug ripoff gone bad. How does that mitigate? Well, again, you take that in conjunction with the fact that he was not the primary actor, he did not kill the three individuals that were killed in this case. He was under the influence of drugs. He's trying to minimize his activity in the murders, that he was a follower. And there was evidence of that at the ---- during trial, that he was a follower. So that was his strategy. To answer Judge Schroeder's question, that was his strategy at sentencing. Again, this case is better for the State in terms of evidence to impose a death sentence than it was in 1984. We would ask this Court to review the district court's findings. The factual findings that are numerous regarding the defendant's or Petitioner's experts are ---- were not made in clear error. And we would ask this Court to affirm the district court's finding denying Petitioner's IAC claim. Thank you. If I may briefly address the damaging rebuttal issue, I think it's important for me to say that most of that evidence that the appellees talk about was in the record through the pre-sentence report. In addition, the evidence that was not in the pre-sentence report, the appellees never proved that the damaging evidence would have come in at trial. All we have is trial counsel saying, I believe that the prosecutor would have put the evidence on. Is there anything in the record that indicated that the prosecutor knew about these things at the time? There's nothing in the record to indicate that. The way I read it, it seemed to be his presumption that because there was a very competent prosecutor on the other side, that the prosecutor would discover these things. But I didn't see any indication that the prosecution knew these things. That's correct, Your Honor. There's nothing in the record to indicate that. In addition, rebuttal puts, if this information did come forward at the sentencing hearing, it would put Mr. Correll's life in context. It would explain his behaviors. And we have to remember that these acts occurred when he was a juvenile, when he was 11, 12, 13 years old. I'd like to direct the Court to the Mayfield decision in the case of the Mayfield case, which, in that case, an en banc panel of this Court said that the reasonable probability consideration extends to the appellate court when it reweighs the evidence. So Mr. Collins was not just making a record here or presenting the evidence to the trial judge. The Court of Appeals or the Arizona Supreme Court would have had an opportunity to review the claims as well. And at the time, under the mitigating factors that existed, there were numerous Arizona Supreme Court decisions that, for instance, Gerlaugh, Richmond, Claiborne, and Gressler talked about dysfunctional family and abusive childhood. The Court of Appeals It's a mitigating factor. Yeah, sure, I understand that. But I guess what I'm asking you is, in terms of either Arizona or Ninth Circuit cases, is there a factor such that if it had only been introduced, it would have trumped all the others, and therefore there would be no death penalty? Again, I think all of these factors had to be introduced at the sentencing hearing. It would take every one of these, not just one more. I just want to be sure I understand your argument. Any one of these should have been presented, and all of these did exist, so all of them should have been presented. Okay. But I don't think you've answered my question. Which is the one that trumps them all, that if it had only been introduced, this man would never have been sentenced to death? I don't know if I could pick one. Any one of them on their own, I think, is a mitigating factor that, okay. The Attorney General said that, I think he said, that the record shows that Collins thought that there was only a one in 20 chance of his getting the death penalty on the basis of the existing record? Yes. Is that your position as well? I'm not quite sure I understand that. Our position is that obviously the facts were bad. That should have driven Mr. Collins to investigate everything about Mr. Carrell's case. Wait. Was it he had only a one in 20 chance of getting it or of not getting it? I'm not. Oh, I'm sorry. I misunderstood. I thought the Attorney General said that Collins thought that on the existing record he had only a one in 20 chance of getting the death penalty and that had you put in any mitigation and the rebuttal had come in, it would have been practically certain. It would have increased the chances. That was his calculus, I gather. Correct. One in 50. Those were the odds that he gave. Then later on in his testimony, he said he thought it was an uphill battle on his part as well. He said some sort of contradictory statements about that at the time. One final point I would like to make is that the appellees in their brief write that the district court never stated that Collins' strategy of sentencing consisted of a residual doubt theory. They say that at page 47 of their brief. In closing, Mr. Correll asked this court to remand this matter to the district court with instructions to grant a writ and remand this case for a new sentencing hearing. Thank you. Thank you, counsel. The case just argued is submitted for decision. Thanks, counsel, for its presentations. And the court for this session stands adjourned.
judges: Schroeder, O'scannlain, Thomas